# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH TAY2GIRLS THAT IS STORED AT PREMISES CONTROLLED BY SNAPCHAT | )<br>)<br>) Case No. 1:18sw56<br>)<br>)<br>) |

**APPLICATION FOR A SEARCH WARRANT**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____Central_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Conspiracy to distribute controlled substances |
| 18 U.S.C. § 922(g)(1) | Possession of a firearm by a convicted felon |

The application is based on these facts:
See attached Affidavit.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jonathan F. Earle, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___01/26/2018___

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, Virginia

Hon. Theresa Carroll Buchanan, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Place to Be Searched

This warrant applies to information associated with Snapchat user account **"TAY2GIRLS"** that is stored at premises owned, maintained, controlled, or operated by Snap Inc., a company headquartered at Snap Inc. Custodian of Records, 64 Market Street, Venice, California 90291.

## ATTACHMENT B

## Particular Things to Be Seized

I. **Information to Be Disclosed by Snap Inc. (hereinafter the "Provider")**

    1. To the extent that information associated with Snapchat user account "**TAY2GIRLS**" (hereinafter the "Account") is within the possession, custody, or control of Provider, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on December 6, 2017, Provider is required to disclose the following information to the government from January 1, 2017 to the present:

    a. All records or information in the Account and maintained regarding the creation and use of the Account, including Basic Subscriber Information, Snapchat username, E-mail address, phone number, Snapchat Account Creation information, Timestamp and IP address logins and logouts, address books, contact lists, telephone numbers, Snaps, Stories, and Chats.

    b. The contents of all messages sent to and from the Account, including stored or preserved copies, drafts of messages, any deleted messages that are stored, the source and destination addresses associated with any messages, the date and time at which each message was sent, and the size and length of each message.

    c. All records or other information regarding the identification of the Account, to include full customer or subscriber name, customer or subscriber physical address, local and long distance connection records, telephone numbers, and other identifiers, records of session times and durations, the date on which the Account was

created, the length of service, the IP address used to register the Account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

    d.    The types of service utilized.

    e.    All records pertaining to communications between Provider and any person regarding the Account, including contacts with support services and records of actions taken.

**II.    Information to Be Seized by the Government**

2.    All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Section 922(g)(1) (felon in possession), and Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute controlled substances) pertaining to the following matters:

    a.    All records or information in the Accouns and maintained regarding the creation and use of the Account, including Basic Subscriber Information, Snapchat username, E-mail address, phone number, Snapchat Account Creation information, Timestamp and IP address logins and logouts, address books, contact lists, telephone numbers, Snaps, Stories, and Chats.

    b.    Messages, communications, records, and files associated with or attached to email messages, and transactional data that constitutes evidence of, that may have been used to facilitate, and that were capable of being used to commit or further violations of the above-reference code sections, and to create, access, or store evidence of such crimes.

  c. Information relating to who created, used, and communicated with the Account, including records about their identities and whereabouts.

  d. Information indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner(s).

  e. Evidence indicating the Account owner's and user's state of mind as it relates to the crimes under investigation.

  f. All records, documents, invoices, or materials associated with the Accounts that concern accounts with an Internet service provider or a telephone service provider whose services may have been used in the commission of the above-reference code sections and crimes.

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **TAY2GIRLS** THAT IS STORED AT PREMISES CONTROLLED BY SNAPCHAT | **UNDER SEAL** <br><br> Case No. 1:18sw56 |
|---|---|

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jonathan F. Earle, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for approximately eight years. Since March 2013, I have been assigned to the Washington Field Division's Firearms Trafficking Group and Falls Church Group II. My assignments include investigating individuals who are involved in the illegal possession and transfer of firearms, violent crimes involving firearms, and narcotics trafficking.

2. This affidavit does not contain every fact known to me regarding this investigation, but rather contains information necessary to demonstrate probable cause in support of the above-referenced search warrant. The facts and information contained in this affidavit are based on my personal knowledge and information obtained from federal and state law enforcement officers. All observations referenced in this affidavit that were not personally made by me were relayed to me by the person(s) who made such observations or in reports that detailed the events described by that person.

3. Based on my training and experience I know individuals use Snapchat and other social media platforms to possess, distribute or purchase firearms and or controlled substances. Individuals use direct or private messages on Snapchat to conceal from law enforcement photos, conversations or videos of them possessing or purchasing firearms or distributing controlled substances.

4. I make this affidavit in support of an application for a search warrant for information associated with Snapchat handle (or user account) "**TAY2GIRLS**" (the "SUBJECT ACCOUNT") and stored at premises owned, maintained, controlled, or operated by Snap Inc ("Snapchat"), which operates a video messaging application by which users can take photos, record videos, add text and drawings, and send them to a controlled list of recipients. Snapchat is headquartered in Venice, Los Angeles, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Snapchat to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the SUBJECT ACCOUNT.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(g)1 (felon in possession of a firearm), Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the intent to distribute cocaine and other controlled substances), as described in Attachment B have been committed by TAVON BAILEY. There is also probable cause to search the SUBJECT ACCOUNT for information

described in Attachment A for evidence of these crimes and items to be seized listed in Attachment B.

### Probable Cause

A.  Background of Investigation

6. In February 2017, a cooperating source ("CS-1") reported to the Prince William County Police Department that Tarvell Vandiver was a narcotics distributor. CS-1 is a member of the Imperial Gangsta Blood ("IGB") gang. CS-1 will be referred to in the masculine gender, regardless of CS-1's true gender. CS-1 has been convicted of two felonies, including robbery and a probation violation. He was arrested in December 2016, in Prince George's County, Maryland, for possessing a stolen firearm as a convicted felon and possession of controlled substances. CS-1 originally cooperated because he hoped to receive a lesser sentence. Based on CS-1's cooperation, Prince George's County dismissed his charges. CS-1 continues to cooperate because he is being compensated. CS-1 also hopes to be relocated.

7. In March 2017, ATF and the Federal Bureau of Investigation ("FBI") began jointly investigating Blood gang members to include Vandiver and his associates involved in criminal activity in Northern Virginia.

8. On January 9, 2017, a federal Grand Jury returned an Indictment against Tarvell Vandiver for Conspiracy to Distribute 280 Grams or More of Cocaine Base, Conspiracy to Distribute Five Kilograms or More of Cocaine, Conspiracy to Distribute 100 Grams or More of Heroin, Distribution of 28 Grams or More of Cocaine Base, Distribution of 280 Grams or More of Cocaine Base, Distribution of 40 Grams or More of Fentanyl and Use and Carry of a Firearm During and in Relation to a Drug Trafficking Crime.

B. <u>BAILEY's Involvement in Drug Trafficking</u>

9. On July 18, 2017, CS-1, at the direction of law enforcement, socialized with BAILEY at an address located in Washington, DC. While at the address, BAILEY asked CS-1 for $100 in order to purchase a quantity of cocaine from Vandiver. CS-1 provided BAILEY $100 in United States currency.

10. On July 22, 2017, CS-1, at the direction of law enforcement, socialized with BAILEY in the area Washington, DC. While socializing with BAILEY, BAILEY told CS-1 that he had used the $100 provided by CS-1 to purchase $100 worth of cocaine from Vandiver. BAILEY further informed CS-1 that he made $900 profit from the cocaine and that he wanted to increase his cocaine distribution due to the high profit margin.

11. On July 25, 2017, CS-1, at the direction of law enforcement, was present with BAILEY and Vandiver at the residence of a co-conspirator, located in Woodbridge, Virginia. While at this residence, CS-1 and BAILEY were present while Vandiver cooked cocaine into cocaine base, a Schedule II controlled substance. Once Vandiver was finished cooking cocaine base, CS-1 traveled with Vandiver and BAILEY to a gas station in Woodbridge, where Vandiver distributed an amount of cocaine base to Brandon Edler. Edler is currently charged via criminal complaint in the Eastern District of Virginia with conspiring to distribute cocaine base.

12. On August 8, 2017, CS-1, at law enforcement direction, was present with BAILEY and Vandiver in the area of Woodbridge. Vandiver drove CS-1 and BAILEY to an address in Woodbridge, where Nasiru Carew provided Vandiver with a light blue plastic bag. Carew is currently charged via criminal complaint in the Eastern District of Virginia with conspiracy to distribute marijuana. CS-1 stated that he believed that this bag contained an

4

amount of marijuana. Vandiver then drove CS-1 and BAILEY to another address in Woodbridge, where Vandiver exited the vehicle and met with Michael Lederer. Lederer is currently charged in the Eastern District of Virginia with being a prohibited person in possession of firearms. After meeting with Lederer, CS-1 observed Vandiver walk back to Vandiver's vehicle while counting money. CS-1 further stated that Vandiver was no longer in possession of the light blue plastic bag. Vandiver, CS-1, and BAILEY then returned to the address associated with Carew in Woodbridge. While at the address, CS-1 stated that Vandiver exchanged approximately one pound of marijuana for another, better quality pound of marijuana with Nathaniel Bruce-Cobbold. Cobbold is currently charged via criminal complaint in the Eastern District of Virginia with conspiracy to distribute marijuana. CS-1 stated that Vandiver then transported BAILEY to his vehicle.

  C. <u>Surveillance of BAILEY and Vandiver</u>

  13. On December 4, 2017, Vandiver contacted CS-1 and informed him of a mandatory IGB leadership meeting that was scheduled to be held on December 5, 2017, in Richmond, Virginia. CS-1 was further instructed to drive Vandiver and BAILEY to the meeting. CS-1 was told to be at Vandiver's residence in the morning hours of December 5, 2017.

  14. On December 5, 2017, law enforcement met with CS-1 and placed an audio recording/transmitting device on his person. CS-1 was followed to the area of Vandiver's residence on Bayside Avenue, Woodbridge, Virginia, where CS-1 picked up Vandiver and BAILEY. Vandiver and BAILEY exited Vandiver's apartment and met CS-1 in the parking lot. Both BAILEY and Vandiver entered CS-1's vehicle and they departed with law enforcement

following the vehicle. Law enforcement followed CS-1's vehicle on Bayside Avenue and observed the vehicle turn around and return to the parking lot of Vandiver's residence.

15. A 2009 Dodge Challenger, bearing Virginia registration XXX-7UL was parked near the front of the entrance to Vandiver's building. In the past, law enforcement have observed Vandiver operating this vehicle despite the fact that it is registered to a female. Law enforcement observed CS-1 park outside of Vandiver's residence in the area of Vandiver's Dodge Challenger, remain for a few minutes, then drive away from the area in his vehicle, with BAILEY and Vandiver as passengers.

16. Law enforcement listened in real-time (and later reviewed to corroborate) the conversation that took place within CS-1's vehicle. CS-1 was also relaying intelligence about the conversation to law enforcement. For instance, CS-1 informed law enforcement that BAILEY had placed a firearm in the glovebox of Vandiver's Dodge Challenger.

17. When the group departed the apartment in CS-1's vehicle, Vandiver asked BAILEY if he brought his "joint" (based on my training and experience, I know "joint" is a common slang term for a firearm). BAILEY responded, "Yea." Vandiver asked BAILEY, "You wanna bring that shit bro, if you don't want to, you don't got to, for real." BAILEY responded, "That's good, I'll put it back." Vandiver told BAILEY, "That nigga BILLZ bringing a joint, I don't think you really need it." BILLZ is a known IGB gang member as well. Vandiver told BAILEY, "Throw it in my car real quick."

18. CS-1 later informed law enforcement that he turned the vehicle around after initially departing Vandiver's residence and returned to the parking lot. According to CS-1, when BAILEY and Vandiver entered his vehicle, BAILEY had a black pistol in his waistband.

6

CS-1 stated BAILEY and Vandiver had a conversation about the firearm and Vandiver instructed BAILEY to place the firearm in his (Vandiver's) vehicle. CS-1 stated BAILEY exited his vehicle and went to the driver's side of Vandiver's Dodge Challenger. CS-1 stated Vandiver provided BAILEY with the key to place the firearm in the glove box. CS-1 stated BAILEY placed the firearm in the glove box and then exited Vandiver's vehicle. When BAILEY returned to CS-1's vehicle, he realized he still had a magazine on him, so he returned to Vandiver's vehicle to place the magazine in the glovebox as well.

        D.        <u>Search Warrant on Vandiver's Dodge Challenger</u>

        19.        On December 4, 2017, the Honorable Theresa Carroll Buchanan, United States Magistrate Judge for the Eastern District of Virginia, authorized a search warrant for Vandiver's 2009 Dodge Challenger bearing Virginia registration XXX-7UL.

        20.        After learning BAILEY had placed his firearm in the glovebox of Vandiver's vehicle, law enforcement located the vehicle, which remained parked outside of Vandiver's residence on Bayside Avenue. On December 5, 2017, at approximately 1:42 p.m., law enforcement executed the search warrant and had the vehicle towed to a secured parking lot maintained by the Prince William County Police Department. Law enforcement commenced searching the vehicle at approximately 2:38 p.m. Inside the vehicle, law enforcement located and seized suspected cocaine under the floor mat of the driver's seat. Inside the glovebox of the vehicle, law enforcement located and seized a Sig Sauer SP2340 .40 caliber pistol. Based upon my training and experience, I know this pistol to be a firearm as that term is defined in Title 18, United States Code, Section 921(a)(3). I also know that the Sig Sauer SP2340 .40 caliber pistol

7

is manufactured outside of the Commonwealth of Virginia; consequently, the firearm has traveled in interstate commerce.

E. BAILEY's Criminal History

21. Law enforcement has reviewed BAILEY's criminal history. BAILEY has been convicted in the Commonwealth of Virginia of ten felony offenses, with each punishable by imprisonment for a term exceeding one year. On October 3, 2013, BAILEY was convicted of Possession of a Firearm by a Felon in Alexandria, Virginia. BAILEY is currently on probation out of Alexandria, Virginia.

F. Probable Cause to Search the Account

22. Law enforcement identified the SUBJECT ACCOUNT as belonging to BAILEY because of photos he posts of himself that match law enforcement booking photos of BAILEY. In addition, co-conspirators refer to BAILEY as "T2G."

23. During the course of the investigation, law enforcement observed videos on the SUBJECT ACCOUNT of Bailey shooting and possessing a firearm with a high-capacity magazine.

24. Based on this information, I believe there is probable cause to support that the SUBJECT ACCOUNT has evidence of BAILEY possessing firearms after being previously convicted of a felony offense in the state of Virginia and evidence of BAILEY in possession of controlled substances.

**Background on Snapchat**

25. Snapchat is a video messaging application by which users can take photos, record videos, add text and drawings, and send them to a controlled list of recipients, which was

8

released as an Android app on October 29, 2012. These sent photographs and videos are known as "Snaps." Users may set a time limit for how long recipients can view their Snaps. A user can also add the photo/video Snap to their "Story." Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Snapchat also has a messaging service. A user can also type messages to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties — and both parties swipe away from the Chat screen — the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message (text or photo) that he or she wants to keep.

26. Snapchat maintains basic subscriber information, including usernames, email addresses, phone numbers, account creation information, Internet Protocol addresses of account logins and logouts, logs of messages sent and received, including some metadata about the messages, and some message content.

27. On December 6, 2017, I sent a preservation letter pursuant to Title 18, United States Code Section 2703(f) for all stored communications to Snapchat for the SUBJECT ACCOUNT. I have reviewed the Snapchat guide for law enforcement, and know that Snapchat retains logs of messages sent and received, and they will provide the meta-data about the message pursuant to a search warrant. I also know that, according to Snapchat, "In certain limited circumstances it may be possible for us to retrieve the content of sent Snaps. The reason we often will not be able to retrieve Snap content is that we delete each Snap from our servers once all recipients have viewed it. And even when a Snap remains unopened, it will be deleted 30 days after it was sent." I know that Snapchat honors requests from law enforcement to

preserve information in accordance with 18 U.S.C. § 2703(f). Upon receiving a preservation request on law enforcement department letterhead, Snapchat will preserve available account information associated with the username listed in the request in an offline file for up to 90 days and will extend the preservation for one additional 90-day period on a renewed request.

28. Based on the information above, the computers of Snapchat are likely to contain all the material described above with respect to the SUBJECT ACCOUNT, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

### Information To Be Searched And Things To Be Seized

29. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Snapchat to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

30. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute

controlled substances), and Title 18, United States Code, Section 922(g)1 (felon in possession) may be located in the SUBJECT ACCOUNT described in Attachment A.

31. This Court has jurisdiction to issue the requested warrant to Snapchat because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). Specifically, the Court is a district court of the United States ... that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

32. Based on the forgoing, I request that the Court issue the proposed search warrant.

33. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Because the warrant will be served on Snapchat, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Jonathan F. Earle
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SUBSCRIBED and SWORN to before me on \_\_\_1|26\_\_\_, 2018.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge

11

## ATTACHMENT A

### Place to Be Searched

This warrant applies to information associated with Snapchat user account **"TAY2GIRLS"** that is stored at premises owned, maintained, controlled, or operated by Snap Inc., a company headquartered at Snap Inc. Custodian of Records, 64 Market Street, Venice, California 90291.

## ATTACHMENT B

### Particular Things to Be Seized

I. **Information to Be Disclosed by Snap Inc. (hereinafter the "Provider")**

1. To the extent that information associated with Snapchat user account "TAY2GIRLS" (hereinafter the "Account") is within the possession, custody, or control of Provider, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on December 6, 2017, Provider is required to disclose the following information to the government from January 1, 2017 to the present:

    a. All records or information in the Account and maintained regarding the creation and use of the Account, including Basic Subscriber Information, Snapchat username, E-mail address, phone number, Snapchat Account Creation information, Timestamp and IP address logins and logouts, address books, contact lists, telephone numbers, Snaps, Stories, and Chats.

    b. The contents of all messages sent to and from the Account, including stored or preserved copies, drafts of messages, any deleted messages that are stored, the source and destination addresses associated with any messages, the date and time at which each message was sent, and the size and length of each message.

    c. All records or other information regarding the identification of the Account, to include full customer or subscriber name, customer or subscriber physical address, local and long distance connection records, telephone numbers, and other identifiers, records of session times and durations, the date on which the Account was

13

created, the length of service, the IP address used to register the Account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

    d.    The types of service utilized.

    e.    All records pertaining to communications between Provider and any person regarding the Account, including contacts with support services and records of actions taken.

## II. Information to Be Seized by the Government

2. All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Section 922(g)(1) (felon in possession), and Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute controlled substances) pertaining to the following matters:

    a.    All records or information in the Accouns and maintained regarding the creation and use of the Account, including Basic Subscriber Information, Snapchat username, E-mail address, phone number, Snapchat Account Creation information, Timestamp and IP address logins and logouts, address books, contact lists, telephone numbers, Snaps, Stories, and Chats.

    b.    Messages, communications, records, and files associated with or attached to email messages, and transactional data that constitutes evidence of, that may have been used to facilitate, and that were capable of being used to commit or further violations of the above-reference code sections, and to create, access, or store evidence of such crimes.

  c. Information relating to who created, used, and communicated with the Account, including records about their identities and whereabouts.

  d. Information indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner(s).

  e. Evidence indicating the Account owner's and user's state of mind as it relates to the crimes under investigation.

  f. All records, documents, invoices, or materials associated with the Accounts that concern accounts with an Internet service provider or a telephone service provider whose services may have been used in the commission of the above-reference code sections and crimes.

15